UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP L. HART, et al<br><br>Defendant. | Case No. 2:11-CV-00513-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in the above-entitled matter is the Plaintiff's Motion for Partial Summary Judgment and related Motion to Strike. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, United States of America, filed a Complaint in this matter seeking to reduce tax assessments to judgment and to foreclose federal tax liens on a parcel of real

**MEMORANDUM DECISION AND ORDER - 1**

property located in Kootenai County, Idaho. (Dkt. 1.) The Complaint names several Defendants with Philip L. Hart as the primary subject of the Complaint.[1] The allegations in the Complaint center around the United States' claims that Mr. Hart has failed to pay his federal tax liabilities for the years 1996, 2001, and 2005-2008. (Dkt. 1.)

On June 1, 2012 this case was stayed as a result of Mr. Hart having filed for bankruptcy. (Dkt. 59.) The stay was lifted on September 13, 2012 after the Court was notified that the bankruptcy petition had been dismissed. (Dkt. 62.) Shortly thereafter, on October 25, 2012, the Court received notice that a second bankruptcy petition had been filed by Mr. Hart which again required that this case be stayed. (Dkt. 63, 64.) On December 13, 2012, the second bankruptcy stay was also lifted because Bankruptcy Court had entered an order denying Mr. Hart's Motion to Extend the Automatic Bankruptcy Stay. (Dkt. 67.) The Court again reset the discovery and motions deadlines; providing the parties additional time to complete discovery and file their motions.[2]

The United States then, on January 18, 2013, filed the instant Motion for Partial Summary Judgment. (Dkt. 70.) On the day his response brief was due, Mr. Hart asked for additional time to file his response to the Motion which this Court granted in part, giving Mr. Hart an additional twenty-one days, effectively twice the normal time for such a filing, in which to file his complete response. (Dkt. 84.) Again, on the day his response

---

[1] As to several of the other named Defendants, the parties have filed Stipulations resolving the claims and Judgments have been entered accordingly.

[2] On January 16, 2013, Mr. Hart filed a third bankruptcy under Chapter 7 which has not resulted in any stay of this matter.

**MEMORANDUM DECISION AND ORDER - 2**

was due, Mr. Hart filed a Second Motion for Extension of Time to file his response which the Court denied. (Dkt. 85, 94.) The United States has also filed a related Motion to Strike. (Dkt. 95.) Both Motions are now ripe for the Court's consideration and the Court finds as follows.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of

**MEMORANDUM DECISION AND ORDER - 3**

presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)[3]

Moreover, under Rule 56, it is clear that in order to preclude entry of summary judgment an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British*

---

[3]*See also,* Rule 56(e) which provides:

(e)     **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)     give an opportunity to properly support or address the fact;
(2)     consider the fact undisputed for purposes of the motion;
(3)     grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4)     issue any other appropriate order.

**MEMORANDUM DECISION AND ORDER - 4**

*Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

**1.      Motion to Strike**

The United States challenges the Declaration of Cynthia Reyburn and the newly prepared tax returns she has compiled. (Dkt. 95.) This witness and these materials, the United States argues, were not disclosed until after the close of discovery and after it had filed the instant Motion for Partial Summary Judgment in violation of Rule 26 and, therefore, the materials should be precluded under Rule 37. As such, the United States asks that the Court strike the materials or, alternatively, reopen discovery for the limited purpose of allowing the United States to obtain documents from Ms. Reyburn, depose her, and also redepose Mr. Hart. (Dkt. 95 at 2.)

**MEMORANDUM DECISION AND ORDER - 5**

In response, Mr. Hart argues the materials are necessary to dispute correctness of the United States' assessments for the years and amounts listed in the Complaint. (Dkt. 99 at 6.) Mr. Hart represents that he was prompted to retain Ms. Reyburn by the United States' "off the record" comments suggesting that he may need to file amended returns. He maintains that his theory of the case disputing the correctness/arbitrariness of the figures asserted by the United States remains the same and that Ms. Reyburn's testimony and materials simply confirms/supports this theory. Further, Mr. Hart agrees with the United States' suggested alternative to reopen discovery on the issues. (Dkt. 99 at 7.)

In early January of 2013, Mr. Hart retained Ms. Reyburn to "review and rework" his tax returns for the years 1997-2008. (Dkt. 87 at ¶ 6-7.) Thus far, it appears Ms. Reyburn has completed her work for the 1997-2001 tax returns which are attached as Exhibit D and E to Mr. Hart's response to the Motion for Summary Judgment. (Dkt. 87 at ¶ 9, Ex. D, E) (Dkt. 88, 91, 92.) Mr. Hart has also submitted two Declarations by Ms. Reyburn. (Dkt. 87, Ex. C) (Dkt. 90, 91.) Following these submissions, the United States filed its Motion to Strike and Reply brief. (Dkt. 95, 96.) In those documents, the United States maintains that the new returns still do not create a genuine issue of material fact as to the categories of deductions the Motion seeks summary judgment upon. (Dkt. 96 at 2.)

The Court has reviewed the record and finds the United States is correct that these submissions by Mr. Hart are untimely as they are outside of the period for producing discovery. As such, the Court will grant the Motion to Strike. The Court has allowed Mr. Hart numerous continuances in this matter that has been pending since October of 2001

**MEMORANDUM DECISION AND ORDER - 6**

and the tax liabilities at issue here have been unresolved since 1996. Moreover, to allow

Mr. Hart to rely upon these untimely submissions in responding to the Motion for

Summary Judgment here is contrary to the procedural rules governing discovery and

motion practice and is unduly prejudicial to the United States. *See* Fed. R. Civ. P. 26, 37.

For these reasons, the Court will grant the Motion to Strike the amended tax returns.

## 2.    Motion for Partial Summary Judgment

The United States' Motion asks that the Court rule upon certain of Mr. Hart's

deductions and enter an order against all Defendants foreclosing the federal tax liens on

Mr. Hart's real property. (Dkt. 72.) The Motion separates the tax years into three

categories of claims. The Court has considered the same and finds as follows.

### A.    Tax Year of 1996

Because the United States Tax Court has determined the amount of Mr. Hart's tax

liabilities for 1996, the United States argues judgment as a matter of law is appropriate on

that year's tax obligation. (Dkt. 72 at 4.) In response, Mr. Hart agrees that the United

States Tax Court's decision is entitled to *res judicata* and he does not challenge the

liability of the decision. (Dkt. 86 at 5.) He does, however, challenge the calculations of

Revenue Officer William A. Waight on the 1996 Form 4340 and the Tax Court Decision.

Mr. Hart did not file a federal income tax return for 1996. The Internal Revenue

Service ("IRS") determined that Mr. Hart owed $12,497 in taxes, $3,124 in failure-to-file

penalty, and $665 in penalties for failing to deposit taxes. (Dkt. 71 at ¶ 1.) The United

States Tax Court reviewed and upheld the IRS's determination and, additionally, imposed

a $10,000 penalty on Mr. Hart for making frivolous arguments. (Dkt. 73-4, Ex. C, D.) The Ninth Circuit affirmed the Tax Court's decision and imposed a further penalty of $2,000. *Hart v. Commissioner*, 14 Fed. Appx. 990 (9th Cir. 2001). The United States argues these decisions are a final decision on the merits of the prior action and, therefore, further relitigation of the same issue here is barred by *res judicata.*(Dkt. 72 at 4.) The Court agrees.

The IRS's determination as to Mr. Hart's 1996 tax liabilities and penalties has been reviewed and upheld by both the United States Tax Court and the Ninth Circuit. As such, re-adjudication of those deficiencies is precluded by *res judicata*. *See United States v. Collins*, No. 05-35850, 2007 WL 4115937 (9th Cir. Oct. 22, 2007) (citing *Baker v. Internal Revenue Service*, 74 F.3d 906, 909–10 (9th Cir. 1996) (per curiam) ("a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action")). For the same reasons, Mr. Hart's challenge to the Revenue Officer's calculations are barred as a matter of law. Even if his challenge were not precluded, Mr. Hart's argument is in error as he was given credit for the $2,428.62 payments made for 1995 as is reflected on the Form 4340 for 1996. (Dkt. 96, Ex. A at ¶ 6.) The Motion is granted as to the 1996 tax year liabilities and penalties.

### B.    Tax Years 2001, 2005 - 2008

For the years 2001 and 2005-2008, the United States seeks to collect the taxes that Mr. Hart reported himself to owe on his returns for those years but did not pay. (Dkt. 72 at 4.) The United States maintains that because Mr. Hart prepared the returns for each of

**MEMORANDUM DECISION AND ORDER - 8**

those years and signed the same under the penalty of perjury, the Court should treat the amount of tax he reported as a conclusive admission. In response, Mr. Hart states he has not had adequate time to have his accountant review his tax returns and is unable to address these arguments. (Dkt. 86 at 6.)

As to Mr. Hart's contention that he has not had adequate time to prepare in this case, the Court has addressed this argument in its prior Orders on the numerous continuance requests Mr. Hart has filed. (Dkt. 52, 84, 94.) This matter has been pending since October 27, 2011 and the tax liabilities at issue have been unresolved since 1996. Mr. Hart's own briefing throughout this case evidences that he is very much aware of the fact that the issues surrounding his tax liabilities as raised in this case would be coming to a head. *See e.g.* (Dkt. 86 at 9) ("Hart acknowledges that a foreclosure is imminent."). It is understandable that circumstances may arise that necessitate continuances; such as Mr. Hart having to retain a new accountant. The Court, however, has afforded Mr. Hart reasonable accommodations due to his having newly retained his accountant. There is simply no basis for Mr. Hart to argue he had insufficient time to have prepared his case.

Mr. Hart also argues that he was "ill equipped and his tax form skills were inadequate when it came to preparing his own returns and calculating tax liability." (Dkt. 86 at 6-7.) Based on the review his new accountant has performed thus far, Mr. Hart now argues the figures relied upon by the United States were "arbitrary and incomplete." (Dkt. 86 at 7.) Essentially, Mr. Hart's position as to these returns is that his new accountant has reviewed his prior tax returns and prepared new revised returns for those years that the

**MEMORANDUM DECISION AND ORDER - 9**

United States should accept at this time. The United States argues the newly completed returns should be given no weight and stricken as they were untimely and produced in this case after discovery had closed. (Dkt. 96 at 11.)

In support of its position, the United States points to Federal Rule of Evidence 801(d)(2) which provides for the admissibility of a statement that is offered against an opposing party in five circumstances. *See* Fed. R. Evid. 801(d)(2). This rule establishes that the tax returns Mr. Hart prepared himself are likely admissible evidence if offered by the United States against Mr. Hart. Mr. Hart, however, now argues that the amended returns prepared by his newly retained accountant for these years are correct and accurate. The admissibility of the newly prepared returns if offered by Mr. Hart is questionable.[4] Under Rule 801(c), the returns appear to be hearsay statements for which there is no exception.[5] Further, as stated above, the Court has granted the Motion to Strike the amended returns.

As to the returns Mr. Hart filed for 2001 and 2005-2008, the Court finds at this stage of the proceedings that a genuine issue of material fact exists as to these returns

---

[4] In so stating, the Court makes clear that it is not ruling at this time as to whether or not any particular evidence will be admissible in this case at a subsequent hearing and/or trial.

[5] To the extent Mr. Hart seeks to use these newly prepared tax returns as proof of the deductions claimed therein, the Court notes that in determining whether a tax payer has met his or her burden to show claimed expenses and/or deductions, courts have routinely held that "it is axiomatic that neither tax returns themselves, nor the execution of such forms under penalty of perjury, establishes the truth of items recited therein." *Naughton v. Commissioner*, No. 10731-00, 2002 WL 2018567, at *9 (U.S. TaxCt. Sept. 4, 2002) (citing cases). Thus, for taxpayers to meet their burden as to a claimed deduction, more must be shown than merely producing the tax return signed under penalty of perjury. *Id.* Tax returns do not establish the truth of the facts stated therein.

**MEMORANDUM DECISION AND ORDER - 10**

which precludes summary judgment. The United States' Motion as to these tax years is based solely on the returns Mr. Hart filed claiming those returns are admissions of the tax liabilities stated therein. (Dkt. 72 at 4.) Although the returns are likely admissible evidence against Mr. Hart, the authority concerning whether signed tax returns in and of themselves are proof of the facts and figures contained therein suggests otherwise. *See Naughton*, 2002 WL 2018567, at *9 (A tax return itself does not establish the facts contained therein but merely constitutes a statement of the taxpayer's claim.); *but see United States v. Stephens*, 185 F.Supp.2d 1116, 1126 (E.D. Cal. 2001) ("An assessment of unpaid federal tax, when supported by some positive evidence or properly certified, is presumptively correct evidence of the taxpayer's liability and satisfies the government's burden of proof.") (citations omitted). Because the Motion relies solely upon the tax returns, the Court denies the motion as it is too broad in seeking judgment as a matter of law as to these returns based purely on the fact that Mr. Hart signed and submitted the returns.

### C.     Tax Years 1997 - 2000 and 2002-2004

The final category of returns in the Motion ask the Court to determine whether Mr. Hart is entitled to certain deductions he claimed on Schedule C, Profit or Loss From Business (Sole Proprietorship), to his income tax returns for the years 1997-2000 and 2002-2004. In particular, the United States seeks summary judgment as to 1) any deductions for which Mr. Hart has provided no documentation beyond handwritten spreadsheets purportedly reflecting business expenses, 2) travel/mileage expenses and any

**MEMORANDUM DECISION AND ORDER - 11**

expenses related to Mr. Hart's book, and 3) any expenses that are facially related to the maintenance of an office. Here again, Mr. Hart's response is that his accountant needs additional time to review his tax returns and that the figures used by the United States are "arbitrary and incorrect." (Dkt. 86 at 7.)

The issue raised in the Motion as to these tax years turns on whether the listed expenses on the Schedule C forms are properly deductible. The deductions relate to expenses Mr. Hart claims to have incurred in: 1) writing a book entitled *Constitutional Income: Do You Have Any?,* 2) an entity called Alpine Northwest III Trust ("Alpine Northwest"), and 3) a purported sole proprietorship business.

Deductions are a matter of legislative grace. *See White v. United States*, 305 U. S. 281 (1938); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). It is the taxpayer's burden to clearly shown the right to a claimed deduction. *See Sparkman v. Commissioner*, 509 F.3d 1149, 1159 (9th Cir. 2007) ("[A]n income tax deduction is a matter of legislative grace and ... the burden of clearly showing the right to the claimed deduction is on the taxpayer.") (quoting *New Colonial Ice*, 292 U.S. at 440 and citing *Boyd Gaming Corp. v. Commissioner*, 177 F.3d 1096, 1098 (9th Cir. 1999)). "[D]eductions are strictly construed and allowed only as there is a clear provision therefor." *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

The deductions claimed here are related to alleged business expenses. Section 162(a) of the Internal Revenue Code provides for such deductions stating:

(a) In general.--There shall be allowed as a deduction all the ordinary and

**MEMORANDUM DECISION AND ORDER - 12**

necessary expenses paid or incurred during the taxable year in carrying on
any trade or business, including--

> (1) a reasonable allowance for salaries or other compensation
> for personal services actually rendered;
> (2) traveling expenses (including amounts expended for meals and
> lodging other than amounts which are lavish or extravagant under the
> circumstances) while away from home in the pursuit of a trade or
> business; and
> (3) rentals or other payments required to be made as a condition to
> the continued use or possession, for purposes of the trade or
> business, of property to which the taxpayer has not taken or is not
> taking title or in which he has no equity.

....

26 U.S.C. § 162(a). To qualify for a deduction under § 162(a), "an item must (1) be paid

or incurred during the taxable year, (2) be for carrying on any trade or business, (3) be an

expense, (4) be a necessary expense, and (5) be an ordinary expense." *INDOPCO*, 503

U.S. at 1043-44 (citing *Commissioner v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 352

(1971)) (quotations omitted).

## 1.     Failure to Produce Sufficient Records

In general, Mr. Hart used the same checking account to pay for his personal and

business expenses. (Dkt. 71 at ¶ 5) (Dkt. 76-1 at 109-110.) To track his business expenses

made from his checking account for tax purposes, Mr. Hart copied payments listed in his

check register to a handwritten spreadsheet for each year. (Dkt. 71 at ¶ 6.)[6] On the

spreadsheet he would list the portion of the expense that he considered to be a business

expense. Mr. Hart also used his credit cards for both personal and business expenses.

---

[6] Mr. Hart's spreadsheets are attached the Declaration of Adam Strait in the record at (Dkt. 76,
Ex. 5, 8, 11, 14, 19, 22, and 25.)

**MEMORANDUM DECISION AND ORDER - 13**

(Dkt. 71 at ¶ 7.) Similar to his checking account, when he would write a check to the credit card company, Mr. Hart would indicate on the spreadsheet what portion of that check he believed was a business expense. Mr. Hart then used these handwritten spreadsheets to prepare his tax returns for the years 1997 through 2004 by totaling the expenses listed and then including them as categories of deductions on the tax return form. (Dkt. 71 at ¶ 8.)

The United States argues summary judgment is proper as to those expense deductions for which he cannot provide any supporting evidence beyond the handwritten spreadsheet. (Dkt. 72 at 6.) In support of the Motion, the United States prepared summary exhibits listing the expenses for which it claims Mr. Hart has failed to provide supporting materials. (Dkt 76, Ex. 47.) In particular, the United States takes issue with two particular types of records that it argues are lacking. First, Mr. Hart has failed to produce any credit card invoices in discovery. The United States argues because Mr. Hart used the same cards to pay personal and business expenses it is impossible to determine whether particular expenses are properly deductible without the invoices. The second type of record the United States challenges are the expense categories listed on the tax returns for which there are no corresponding entries on Mr. Hart's own spreadsheets. (Dkt. 72 at 7.) The United States argues the following deductions claimed on the returns do not have corresponding entries on the spreadsheets: "Meals and Entertainment" in 2000 and 2002, "Repairs" and "Editing" in 2002, and "Training" in 2003. (Dkt. 72 at 7.) In response, Mr. Hart states that "he provided all of the documents needed in the audit process in three

**MEMORANDUM DECISION AND ORDER - 14**

boxes" and that "his accountant has corrected some of the misapplied deductions for the years 1997 through 2001 and will correct those of the years 2002 through 2008." (Dkt. 86 at 8); (Dkt. 88, Aff. Hart March 6, 2013.)

Section 162 of the Internal Revenue Code, 26 U.S.C. § 162, allows for the deduction of certain ordinary and necessary business expenses. *See* 26 U.S.C. § 162(a). However, "[t]axpayers are required to keep sufficient records to substantiate deductions." *Sparkman*, 509 F.3d at 1159 (citing I.R.C. § 6001; Treas. Reg. § 1.6001–1(a)). Section 274(d) requires that the taxpayer substantiate business expenses "by adequate records or by sufficient evidence corroborating his own statement." 26 U.S.C. § 274(d). The records must set forth the amount of the expense, the time and place of the travel, the business purpose of the expenditure, and the business relationship of the taxpayer to the expense incurred. The Commissioner is given authority to implement the substantiation requirements by appropriate regulations.

The substantiation requirements are fully set forth in Income Tax Regulation § 1.274-5 which provides two methods of substantiating each element of an expenditure.[7]

_____

[7] Income Tax Regulation § 1.274-5T(c) states in full:
(c) Rules of substantiation--(1) In general. Except as otherwise provided in this section and § 1.274–6T, a taxpayer must substantiate each element of an expenditure or use (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement. Section 274(d) contemplates that a taxpayer will maintain and produce such substantiation as will constitute proof of each expenditure or use referred to in section 274. Written evidence has considerably more probative value than oral evidence alone. In addition, the probative value of written evidence is greater the closer in time it relates to the expenditure or use. A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a

**MEMORANDUM DECISION AND ORDER - 15**

"Each expenditure may be established through adequate records or by the taxpayer's own detailed statements containing specific information plus any corroborative evidence." *Meridian Wood Co. v. United States*, 725 F.2d 1183, 1189 (9th Cir. 1984) (citations omitted). "Under Treasury Regulation 1.274-5(c)(2) adequate records include an account book, diary, or other documentary evidence sufficient to prove every element of substantiation required by section 274. The regulation further requires that the recording of an element of an expenditure must be made at or near the time of expenditure, when the taxpayer 'has full present knowledge of each element of the expenditure.'" *Id.* (quoting Treas. Reg. § 1.274-5(c)(2)(ii)(a) (1975)). "To constitute an adequate record a written statement of the business purpose is generally required, although the degree of substantiation may vary depending on the surrounding facts and circumstance." *Id.* (citing

statement prepared subsequent thereto when generally there is a lack of accurate recall. Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in paragraph (c)(2) of this section.

(2) Substantiation by adequate records--(I) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record (as provided in paragraph (c)(2)(ii) of this section), and documentary evidence (as provided in paragraph (c)(2)(iii) of this section) which, in combination, are sufficient to establish each element of an expenditure or use specified in paragraph (b) of this section. It is not necessary to record information in an account book, diary, log, statement of expense, trip sheet, or similar record which duplicates information reflected on a receipt so long as the account book, etc. and receipt complement each other in an orderly manner.
(ii) Account book, diary, etc. An account book, diary, log, statement of expense, trip sheet, or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure or use is made at or near the time of the expenditure or use.

**MEMORANDUM DECISION AND ORDER - 16**

§ 1.274-5(c)(2)(ii)(b)). "Where the requirements for adequate records cannot be met, and the taxpayer relies on his or her own detailed statement, sufficient corroborating evidence must be offered. If the element to be established is business purpose or business relationship, corroboration may be by circumstantial evidence." *Id.* (citing § 1.245(c)(3)(ii)). However, if:

> such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence [consisting of adequate records].

*Id.*

In its Motion, the United States seeks summary judgment as to particularly identified expenses that Mr. Hart claimed as business deductions on his returns for these years for which there is no supporting documentation. (Dkt. 76, Ex. 47.) In comparing the tax returns to Mr. Hart's handwritten spreadsheets, the Court agrees that the United States has shown that Mr. Hart has failed to produce sufficient evidence to demonstrate his entitlement to the claimed deductions that do not at least appear on both the spreadsheets and the check register. *See Sparkman*, 509 F.3d at 1159; *Meridian Wood*, 725 F.2d at 1188 (absent substantiation of date, place, amount, business purpose, and business relationship, under § 274(d), entertainment expense deductions are disallowed); see also 26 U.S.C. § 162(a) (permitting deduction of certain "ordinary and necessary" business expenses); 26 U.S.C. §§ 274(d), 280F(d)(4)(A)(iv) (setting forth substantiation requirements for claimed deductions for travel, entertainment, and computer expenses);

**MEMORANDUM DECISION AND ORDER - 17**

26 U.S.C. § 280A(c)(1) (setting forth limited business use exceptions to general prohibition on deductions with respect to taxpayer's residence). Based on his own deposition testimony, Mr. Hart's record keeping system consisted of him separating his personal and business expenses on these handwritten spreadsheets. (Dkt. 76-1 at 106-107, 109-110.) Thus, where there is no category for an expense on the spreadsheet, it is undisputed that there is no record let alone an appropriate substantiated record to support the claimed deduction. Mr. Hart's unsupported conclusory statement in his response brief and Affidavit is insufficient to rebut the United States' evidence, or to create a genuine issue of material fact. (Dkt. 86 at 8); (Dkt. 88, Aff. Hart March 6, 2013.) Therefore, as to deductions claimed on the tax returns for which there is no corresponding entry on his spreadsheets, the Court finds summary judgment is proper.

As to the claimed deductions where Mr. Hart used a credit card to pay for the expense, the Court finds a genuine issue of material fact exists precluding summary judgment. Although Mr. Hart's response is lacking, the Court finds summary judgment as to all of the deductions Mr. Hart claimed for credit card payments to be too broad at this time. A genuine issue exists as to whether the credit card invoices may exist and/or may be a record from which Mr. Hart could establish the deductions were proper. Thus, the Motion is denied as to these deductions.

### 2.     Travel and Mileage Expense Deductions

The United States argues Mr. Hart cannot deduct travel or mileage expenses because he failed to keep contemporaneous records of the business purpose of the trips.

**MEMORANDUM DECISION AND ORDER - 18**

(Dkt. 72 at 7.) In particular, the United States points to the "Car and Truck Expenses" including mileage that are claimed on his tax returns.

Section 162(a)(2) allows a taxpayer to deduct travel expenses, including mileage, "in the pursuit of a trade or business." *Tilman v. United States*, 644 F.Supp.2d 391, 407 (S.D.N.Y. Aug. 3, 2009). Travel expenses are subject to the heightened substantiation requirement of § 274(d). *Id.* (citing § 274(d); 26 C.F.R. § 1.274-5T(b)(2)). "The tax code precludes a deduction for ... auto and travel expenses, unless a taxpayer substantiates by [1] adequate records or [2] by sufficient evidence corroborating the taxpayer's own statement the following five elements: the amount, date, time, place and business purpose of the expense." *Id.* (citing *Reynolds v. Commissioner*, 296 F.3d 607, 615 (7th Cir. 2002); 26 C.F.R. § 1.274-5T(b)(2)). As stated above in the previous section of this Order, "[t]axpayers are required to keep sufficient records to substantiate deductions." *Sparkman*, 509 F.3d at 1159 (citing I.R.C. § 6001; Treas. Reg. § 1.6001–1(a)). Section 274(d) requires that the taxpayer substantiate business expenses "by adequate records or by sufficient evidence corroborating his own statement." 26 U.S.C. § 274(d). Section 274(d) sets forth substantiation requirements for claimed deductions for travel expense stating no deduction shall be allowed:

> (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
>
> (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or

**MEMORANDUM DECISION AND ORDER - 19**

(3) for any expense for gifts,

...

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift.

*See* 26 U.S.C. § 274(d). "Absent substantiation of an element of [§] 274(d) (date, place, amount, business purpose, and business relationship), the deduction for [such] expenses is to be disallowed." *Meridian Wood*, 725 F.2d at 1188 (citations omitted); see also *Sparkman*, 509 F.3d at 1159.

To deduct items in these categories, a taxpayer must show that the item claimed is directly related to or associated with the active conduct of their trade or business. *Heinbockel v. Commissioner*, Nos. 12139-09, 9311-10, 2013 WL 1953732, at *18 (U.S. Tax Ct. May 13, 2013). To do so, the taxpayer must provide "adequate records" showing the amount of the expense, the time and place of the expense, the business purpose of the expense, and the business relationship to the expense claimed. *Id.* (citing § 274(d); § 1.274-5T(c)(2)(I)). "A contemporaneous log is not required," but a statement not made at or near the time of the expenditure has the same degree of credibility only if the corroborative evidence has "a high degree of probative value." *Id.* (citing § 1.274-5T(c)(1) and *Reynolds v. Commissioner*, 296 F.3d 607, 615-16 (7th Cir. 2002) (noting that keeping written records is not the only method to prove § 274 expenses but

"alternative methods are disfavored")). These substantiation requirements do not allow estimations of expenses. *Id.*

Mr. Hart's claimed travel expenses are not supported with contemporaneous logs or similar statements that detailed the time or place of the expense or its business purpose as § 274 generally requires. His proof, instead, consists of his own deposition testimony that in compiling his tax returns, he went through his checkbook and credit card statements one by one and assigned each expense to one of the businesses or as a personal expense. Mr. Hart's own deposition testimony however reveals that he did not distinguish between his business and personal activities during and throughout the year. Instead, he separated the two only later for purposes of filing his tax returns. Such record keeping is not sufficient to satisfy § 274. Further, Mr. Hart has not provided any contemporaneous logs, records, or receipts indicating the time or number of miles driven, much less bring forth any records detailing the business purpose of each trip he made or state for which of his alleged businesses a particular trip was made. Although there were a few receipts in the records he used to refresh his memory, his deposition testimony shows that most of Mr. Hart's claimed deductions were derived from his own recollections made some time after the expense was incurred.

This "kind of memory jogging" is not enough to meet the strict substantiation requirement to provide "adequate records." *Heinbockel*, *supra* at *20 (citing § 274( d) and § 1.274-5T(c)(1), Temporary Income Tax Regs.). "[S]uch testimony is not an 'account book, diary, log, statement of expense, trip sheet, or similar record made at or near the

**MEMORANDUM DECISION AND ORDER - 21**

time of the expenditure or use,' much less a record that explained the business purpose."

*Id.* (citing § 1.274-5T(c)(2)(ii), Temporary Income Tax Regs.). However, where a

taxpayer is unable to substantially comply with the requirements of section

1.274-5T(c)(2), an exception exists allowing the taxpayer to satisfy the showing

requirement by producing: (1) a statement-whether written or oral-"containing specific

information in detail as to such element"; and (2) "other corroborative evidence sufficient

to establish such element." *Heinbockel*, *supra* at *20 (citing § 1.274-5T(c)(3)(I)).

> The regulation continues, in greater detail, if that element is the cost or
> amount, time, place, or date of an expenditure or use, the corroborative
> evidence shall be direct evidence, such as a statement in writing setting
> forth detailed information about such element, or documentary evidence
> such as a receipt. If that element is either the business relationship to the
> taxpayer of persons entertained, or the business purpose of an expenditure,
> the corroborative evidence may be circumstantial. Id. The corroborative
> evidence supporting a noncontemporaneous statement must have a high
> degree of probative value to elevate such statement and evidence to the
> level of credibility reflected by a record made at or near the time of the
> expenditure or use supported by sufficient documentary evidence.

*Id.* (citing § 1.274-5T(c)(1)). "In sum, it is possible that documentary evidence such as

receipts coupled with credible testimony can meet section 274's strict requirements." *Id.*

(citation omitted).

Here, Mr. Hart has failed to produce contemporaneous written records for his

travel expenses or fuel costs to support his claimed travel and mileage business expense

deductions. The records produced by Mr. Hart appear to include some receipts for travel

expenses but no supporting documentation showing the business purpose for the claimed

travel expenditure. Furthermore, the records do not substantiate the claimed deductions as

**MEMORANDUM DECISION AND ORDER - 22**

there are no contemporaneous written records to support the business purpose for the claimed expenses as required by the Code and its governing Regulations. This finding is undisputed as Mr. Hart's own testimony at his deposition admitted to his poor record keeping during the time and that his travel expenses and mileage claims were estimates. (Dkt. 76-1 at 160-62.) For the 1998 return in particular, Mr. Hart testified that his record keeping for his business trips "was not very good" and that when he amended that return he used his calendars and different receipts he had in the office to account for his business travels. (Dkt. 76-1 at 160.) He was not, however, able to recall how he distinguished between his business trips for Alpine Northwest, his engineering business, and his book. (Dkt. 76-1 at 161-65.) Mr. Hart has not disputed these facts, pointed to specific facts showing that there is a genuine issue for trial, or come forward with any records and/or evidence to rebut the United States' showing in its Motion as to the "Car and Truck Expenses." As such, the Court grants summary judgment as to the claimed business expense deductions for "Car and Truck Expenses" for the years 1998-2000 and 2002-2004 that Mr. Hart claimed on his tax returns.

### 3.    Expense Deductions Claimed as to His Book

The United States argues Mr. Hart cannot deduct expenses related to his book because  he cannot show that the book was a profit-motivated trade or business. (Dkt. 72 at 9.) Mr. Hart's response states only generally that the issue is not ripe for summary judgment as there is a genuine material issue of fact that exists. (Dkt. 86 at 8.) In reply, the United States maintains that Mr. Hart can only deduct expenses related to his book to

**MEMORANDUM DECISION AND ORDER - 23**

the extent of his "book-related income" pursuant to 26 U.S.C. § 183. Even the newly

submitted amended returns, the United States asserts, shows there was no income or profit

motive from the book and, therefore, none of Mr. Hart's deductions related to the book

are proper. (Dkt. 96 at 7.)

Again, § 162 allows for the deduction of certain ordinary and necessary expenses

paid or incurred during the tax year in carrying on a trade or business. Such expenses are

not deductible unless the taxpayer can show that he is engaged in the activity primarily

for profit. *See* 26 U.S.C. § 183(a); *Wolf v. Commissioner*, 4 F.3d 709, 713 (9th Cir. 1993);

*see also Keating v. Commissioner*, 544 F.3d 900, 903 (8th Cir. 2008) ("The deductibility

of taxpayer expenses related to an activity depends on whether it is carried on for

profit."). "An activity is engaged in for profit if the taxpayer has an actual, honest profit

objective, even if it is unreasonable or unrealistic." *Keating*, 544 F.3d at 904 (citing

Treas. Reg. § 1.183–2(a)).[8]

Treasury Regulation § 1.183–2(b) lists nine nonexclusive factors to consider in

determining whether a business is engaged in for profit: "(1) the manner in which the

taxpayer carries on the activity; (2) the expertise of the taxpayer or her advisors; (3) the

time and effort expended by the taxpayer in carrying on the activity; (4) the expectation

that assets used in the activity may appreciate in value; (5) the success of the taxpayer in

---

[8] If Mr. Hart did not have a profit motive, the United States argues he can deduct his expenses only to the extent that he had income from selling the book. (Dkt. 72 at 9.) Mr. Hart's own returns show that he never realized any income from sales of the book. Therefore, the only avenue for Mr. Hart to claim any deductions related to the book is for there to have been a profit motive in his writing the book.

**MEMORANDUM DECISION AND ORDER - 24**

carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses in respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements of personal pleasure or recreation." *Keating*, 544 F.3d at 904 (citing Treas. Reg. § 1.183–2). "No single factor or even a majority of the factors is controlling, and all of the facts and circumstances must be evaluated, giving greater weight to objective facts than to the taxpayer's statement of intent." *Id.* While the focus of the test for profit motive is on the subjective intent of the taxpayer, the determination is "made by reference to objective standards, taking into account all of the facts and circumstances of each case." 26 C.F.R. § 1.183-2(a). Applying these factors here, the Court finds that Mr. Hart's book was not a trade or business as the undisputed facts show there was no profit motive in writing the book.

At his deposition, Mr. Hart stated that his decision to write his book arose from his having done "some personal research" and the reason for writing the book was to put his views/research of the subject matter out into the public. (Dkt. 76-1 at 96) (and "I felt like I had a view of this that was supported by historical record that nobody else was aware of, and I wanted to put that out in the public."). That the book was written for a non-business purpose is corroborated by Mr. Hart's testimony that he has given away several hundred copies of the book. (Dkt. 76-1 at 103.)

Even more telling, Mr. Hart's own deposition testimony reveals that he did not write the book in a manner consistent with it being a business for profit. "A taxpayer operates in a businesslike manner when, among other things, he has a business plan,

**MEMORANDUM DECISION AND ORDER - 25**

advertises his goods or services, keeps complete records, and responds to losses by changing what he does." *See Heinbockel*, 2013 WL 1953732, at *8 (citations omitted). Mr. Hart admitted there was no business plan for publishing the book nor that he had ever done anything to analyze the book as a business. (Dkt. 76-1 at 102-103.) Mr. Hart did state that he self-published the book, which had three editions, on the advice of others but, there is no indication he sought out advice or undertook efforts to profit from the book. (Dkt. 76-1 at 98.) He stated during his deposition that he does not know what the per-sale profits on his book are and has mostly given away copies of the book. (Dkt. 71 at ¶ 23-26.) Mr. Hart has claimed some travel expenses on his tax returns were related to his book, but he did not separate the travel expenses he alleges to have incurred between his engineering work and his book. (Dkt. 71 at ¶ 27.)

As to the time and effort expended on the book, this factor also weighs against a finding of profit motive.  Sec. 1.183-2(b)(3), Income Tax Regs. (The third factor focuses on the time and effort the taxpayer spends on the activity.). "Devotion of a significant amount of personal time to an activity may show a taxpayer has a profit motive, particularly if he gets no substantial amount of personal pleasure or recreation from it." *Heinbockel*, *supra* at *10. Mr. Hart testified that he "spent a lot of time on the book" but that he couldn't "quantify that number for you" other than it was more than the time he spent doing engineering work. (Dkt. 76-1 at 98-99.) Although Mr. Hart spent a great deal of time on the book, his own deposition testimony goes to show that the time spent was not in the hope of realizing a profit but the time was instead spent for other personal

**MEMORANDUM DECISION AND ORDER - 26**

reasons - i.e. to share his research and view of the subject matter with the public. (Dkt. 76-1 at 96) ("I felt like I had a view of this that was supported by historical record that nobody else was aware of, and I wanted to put that out in the public.").

The Court finds that the other factors also weigh against a finding of a profit motive in light of the fact that: Mr. Hart gave away hundreds of copies of the book, had never before written a book, his own tax returns and records show he has never generated a profit on the book, he worked independently as an engineer, and his book research was more akin to a hobby than a business. In sum, Mr. Hart's testimony concerning how he managed his book-writing activity simply does not support a finding that the book writing was engaged in for purposes of generating a profit - i.e. he testified that he does not know his sales margins on the book, used the same checking account for his personal and book writing activities, had no business plan for the book, and did not view or analyze the book as a business. (Dkt. 76-1 at 99-100) (Mr. Hart stated that the book retailed for $20 and costs $6 to publish and $3-$4 to ship it; he testified that the first and second editions sold out); (Dkt. 76-1 at 102) (Mr. Hart testified that he did not have a separate bank account for his book activities but kept track of those expenses by putting receipts in a separate file.) Even the amended tax returns, which have been stricken, indicate that he has not realized a profit from the book. (Dkt. 87, Ex. D, E) (Dkt. 96 at 7.)

Mr. Hart has not disputed the above facts. His response only generally states that a genuine issue of material fact exists on this issue; but he fails to set forth specific facts showing that there is a genuine issue for trial. The Court finds that Mr. Hart's own

**MEMORANDUM DECISION AND ORDER - 27**

undisputed testimony demonstrates that the book was not engaged in for a profit and, therefore, was not an activity from which Mr. Hart could claim trade or business deductions. Accordingly, the Motion for Summary Judgment is granted on this issue.

### 4.    Expense Deductions for Alpine Northwest

Alpine Northwest was created by Jeff Ormesher as a business trust doing business under the name "Alpine Engineering" until late 2009. (Dkt. 71 at ¶ 9) (Dkt. 76-1 at 28.) Mr. Hart was one of two trustees of Alpine Northwest; the other trustee was Jack Tweedy. (Dkt. 76-1 at 29.) Mr. Hart testified that there were other employees of Alpine Northwest including project managers, an office manager, and engineers. (Dkt. 76-1 at 31-33.) Mr. Hart stated that he "was in the office most days" and worked an average of forty hours per week. (Dkt 76-1 at 34.) Alpine Northwest filed corporate tax returns. Mr. Hart claimed tax deductions for expenses related to Alpine Northwest on his own returns for some furniture he contributed to Alpine Northwest as a capital investment, informal loans he made to Alpine Northwest, office expenses, and purchases for which he was not repaid. (Dkt. 71 at ¶¶ 10-11) (Dkt. 76-1 at 36.) Mr. Hart stated there were no profits for Alpine Northwest. (Dkt. 76-1 at 35.)

The United States argues Mr. Hart cannot claim any business deductions in relation to Alpine Northwest's expenses because they are deductions belonging to Alpine Northwest, not Mr. Hart. (Dkt. 71 at ¶ 12-13) (Dkt. 72 at 11) (Dkt. 96 at 7.)[9] The United

---

[9] Mr. Hart challenges the Declaration of R. James Gleixner submitted by the United States in support of its Motion for Summary Judgment. (Dkt. 75) (Dkt. 86 at 7.) In particular, Mr. Hart challenges Mr. Gleixner's statement that he is a structural engineer and his assessment of Mr. Hart's role in Alpine

States further contends that Mr. Hart cannot show the expense deductions arose from any sole proprietorship separate and apart from Alpine Northwest; in which case he may be able to claim the deductions. The United States argues that Mr. Hart was the only person managing and operating Alpine Northwest and that there was no other sole proprietorship business being operated out of Mr. Hart's home separate from Alpine Northwest under which Mr. Hart could have claimed these deductions. (Dkt. 96 at 7.) In particular, the United States challenges the claimed business expense deductions for utilities, rent, and office supplies because the office was in Mr. Hart's home and he did not maintain an office for any Schedule C business separate from the office for Alpine Northwest. (Dkt. 96 at 7.) Further, the United States maintains that the newly prepared returns do not change the outcome as they appear to claim expenses for the business use of his home rather than claiming them as "normal" Schedule C expenses. (Dkt. 96 at 7.)

"Section 162(a)...allows a taxpayer to deduct all of 'the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.'" *Tilman v. United States*, 644 F.Supp.2d 391, 399-400 (S.D.N.Y. Aug. 3, 2009) (citations omitted). "An expense is ordinary for purposes of this section if it is normal or customary within a particular trade, business, or industry. An expense is necessary if it is appropriate and helpful for the development of the business." *Id.* (citation omitted); *see also Deputy v.*

---

Engineering. (Dkt. 86 at 7.) The substance of the Declaration goes entirely to the United States' contention that Mr. Hart was the sole manager of Alpine Northwest. (Dkt. 75, 96 at 7 n. 2.) The Court has not considered the representations made by Mr. Gleixner in his Declaration and has instead relied upon Mr. Hart's own deposition testimony in ruling on this Motion. (Dkt. 76-1.)

**MEMORANDUM DECISION AND ORDER - 29**

*du Pont*, 308 U.S. 488, 495 (1940)(An expense is "ordinary" where "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved."); *Welch*, 290 U.S. at 113 (For an expense to be "necessary" means that it is "appropriate and helpful" to the taxpayer's business.). To claim such a business expense, a taxpayer must show a business purpose for the expenditure and a relationship between the expenditure and the business.

A number of limitations and requirements apply to this type of deduction. *Id.* Generally, taxpayers are not allowed to deduct personal, living, or family expenses unless expressly allowed in the Code. *See* 26 U.S.C. § 262(a) (precluding deductions for "personal, living, or family expenses"). Section 280A further narrows the general deductibility rule of § 162 when deductions are claimed for the expenses of an office in the home. *Tilman*, 644 F.Supp.2d at 400 (citations omitted). "A taxpayer may only deduct expenses attributable to the business use of his home if he qualifies for one of the statute's exceptions to disallowance." *Id.* (citing *Commissioner v. Soliman*, 506 U.S. 168, 173 (1993)).

Section 280A(c)(1) provides as follows:

(c)(1) Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-
(A) as the principal place of business for any trade or business of the taxpayer,
...

§ 280A. In order to qualify for the § 280A home office deduction, "a taxpayer must show

that the office in his residence 'is exclusively used on a regular basis' as his 'principal place of business.'" *Id.* (quoting *Weissman v. Commissioner*, 751 F.2d 512, 514 (2d Cir. 1984)). "The phrase 'exclusively used on a regular basis' means the taxpayer must show that his home office 'is one that not only is vital to [his] business or employment but also has no use but office use." *Id.* (citing *Cadwallader v. Commissioner*, 919 F.2d 1273, 1275 (7th Cir. 1990)). "In other words, a taxpayer who uses his residence for 'both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test.'" *Id.* (quoting *Weissman*, 751 F.2d at 515-16).

The United States maintains that Alpine Northwest and Mr. Hart's Schedule C business were both run out of his home which, it argues, prevents Mr. Hart from showing the expenses relating to the office space belonged to him as a result of any sole proprietorship business, rather than Alpine Northwest's business, or as a personal expense of Mr. Hart. (Dkt. 72 at 12.) Mr. Hart rebuts the United States' argument by pointing to his deposition testimony and the Declaration of Jessica Streufert. (Dkt. 86 at 7.)

In her Declaration, Ms. Streufert describes Alpine Northwest's office to include employees other than Mr. Hart including project managers, an office manager, and other draftsmen. Ms. Streufert notes that Mr. Hart had "irregular" hours and that she had only minimal contact with him. (Dkt. 89 at ¶ 4.) Ms. Streufert also states she worked as a draftsman at Alpine Northwest from September of 2006 to May of 2007.[10] She notes the

---

[10] The Court does note that Mr. Gleixner states in his Declaration that he worked for Alpine Engineering from early 1999 to early 2004. Thus, he was not at the business at the same time as Ms. Streufert.

**MEMORANDUM DECISION AND ORDER - 31**

company's address at that time was 280 W. Prairie Ave. Suite 4, Coeur d'Alene, Idaho where it operated under the name of "Alpine Engineering." (Dkt. 89 at ¶ 1.) The dates of the returns at issue on this Motion, however, are for the tax years 1997-2000 and 2002-2004 which precede Ms. Streufert's employment. Thus, Ms. Streufert's Declaration is irrelevant as to the tax years at issue here.

During his deposition, Mr. Hart testified that Alpine Northwest had physical locations in Coeur d'Alene, Idaho starting out at 2615 North 4th Street, then moving to 604 Lincoln Way, then 615 Front Street, and finally 280 West Prairie. (Dkt. 76-1 at 39-40.) He testified that in 1998 the 604 Lincoln Way address was the location of his residence, his Schedule C business, and Alpine Northwest. (Dkt. 76-1 at 158.) Later in his deposition Mr. Hart clarified that "604 Lincoln Way was a house that [he] rented" with a large basement where he ran the engineering office out of and he lived on the main level of the house; "So it was both a house and an office." (Dkt. 76-1 at 122.) In 1999, Mr. Hart testified that he also lived at the house on 615 Front street where Alpine Northwest was located. (Dkt. 76-1 at 177.) He further testified that Alpine Northwest was located at the same address where he resided  from 1997 until February of 2005 when Alpine Northwest moved into the office at 280 Prairie. (Dkt. 76-1 at 194-195.) Mr. Hart stated that he allocated the cost of the house between business and personal by assigning a percentage to each purpose, although he could not recall how he performed the allocation. (Dkt. 76-1 at 122-123.) The same was true as to how Mr. Hart allocated the utilities, renters insurance policy, and other expenses related to the houses. (Dkt. 76-1 at 124.)

**MEMORANDUM DECISION AND ORDER - 32**

Having reviewed this deposition testimony, the Court finds the extent of Mr. Hart's use of his home for both Alpine Northwest's business and his own personal use is a material fact that is in dispute. Although the Court has serious reservations concerning whether Mr. Hart can produce the requisite sufficient records to claim these deductions, the Court finds there are enough disputed facts regarding the home office related deductions to overcome summary judgment at this time. As to Mr. Hart's claimed deductions for expenses related to a separate Schedule C business, however, the Court finds summary judgment is appropriate.

In his deposition, Mr. Hart identified various other entities that he purportedly worked for during the tax years in question. Mr. Hart testified that at the time he worked for Alpine Northwest he did engineering work outside of Alpine Northwest on a "job-by-job basis" for clients but "not necessarily an engineering business." (Dkt. 76-1 at 34-35, 91.) Mr. Hart described an entity he owned called AEG, LLC that existed at the same time as Alpine Northwest but stated that 90-95 percent of his engineering work was done for Alpine Northwest. (Dkt. 76-1 at 90-91.) As to Schedule C of his 1997 tax return, Mr. Hart stated that he was operating under the business name "Hart & Associates," which was the same year Alpine Northwest began. (Dkt. 76-1 at 105.) As to these businesses, the Court finds that any office expenses cannot be claimed as a business deduction under the Code because Mr. Hart stated in his deposition that when he did work for his Schedule C business he used a desk at Alpine Northwest's offices and that he did not have a separate space to do his engineering work besides Alpine Northwest's offices.

**MEMORANDUM DECISION AND ORDER - 33**

(Dkt. 76-1 at 200-201.) Thus, by his own testimony, he cannot make the necessary showing that the home offices he has identified were the exclusive and principal place of those businesses; not Alpine Northwest or his own personal residence. *See Tilman*, 644 F.Supp.2d at 400.

Further, Mr. Hart has not kept proper records upon which to claim deductions for these separate businesses. Again, he did not use separate checking accounts or credit cards for his separate Schedule C business and his own personal expenses. (Dkt. 76-1 at 109-110, 114-117.) Mr. Hart testified that he tracked his purported business expenses by compiling a spreadsheet using his checkbook register and then allocating each check to an expense account. (Dkt. 76-1 at 106-107.) Such record keeping, the Court finds, does not satisfy the substantiation requirements.

To summarize, the Court finds there is a genuine issue of material fact in dispute as to the facts surrounding Mr. Hart's claimed office deductions relating to Alpine Northwest. In particular, the locations for Alpine Northwest's offices in relation to Mr. Hart's own personal residence as well as the expenses related to those offices for each of the years at issue. Mr. Hart's deposition testimony raises genuine issues of material fact as to whether the office in his home was exclusively for business purposes as to each particular tax year in question. That being said, the Court makes clear that in order for Mr. Hart to show the claimed deductions were proper, he must show the deductions were necessary for the business as required under the Code. Merely submitting receipts for the

**MEMORANDUM DECISION AND ORDER - 34**

items bought and make self-serving assertions that the items were needed for the business is not enough.

As to the office deductions claimed in relation to any separate Schedule C business, the Court finds there are no genuine issues of material fact in dispute. Mr. Hart's undisputed testimony reveals that he cannot show the office he used for any work other than that done for Alpine Northwest was undertaken at an office used exclusively for purposes of that separate business. As such, summary judgment is granted as to Mr. Hart's claims for office deductions related to any Schedule C entity separate from Alpine Northwest.

### 5.      Head of Household Filing Status

The United States argues that Mr. Hart improperly listed his status as a head of household and claimed an exemption for his daughter, Sarah Elizabeth Hart, as his dependent on his tax returns for the years 1998-2000 and 2002-2004. (Dkt. 72 at 12.) The newly prepared amended tax returns, the United States maintains, continue improperly to assert head-of-household filing status and a dependent exemption for his daughter. (Dkt. 96 at 8.)

To qualify for head-of-household status, Mr. Hart is required to demonstrate that he was not married at the close of the relevant tax year; he did not qualify as a surviving spouse; and he "maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such

**MEMORANDUM DECISION AND ORDER - 35**

household, of" (1) a qualifying child of the individual or (2) any other dependent as defined therein. *See* 26 U.S.C. § 2(b)(1)(A).

It is undisputed that Sarah Elizabeth Hart was not a qualifying child of Mr. Hart. Section 152(c)(1) defines a qualifying child as one who has the same principal place of abode as the taxpayer for more than one-half of such taxable year. *See* 26 U.S.C. § 152(c)(1)(B). Here, Mr. Hart testified at his deposition that Sarah Elizabeth Hart stayed with him a couple of months during the year, mostly over holidays, but he did not have primary physical custody of his daughter. (Dkt. 76-1 at 240.) Further, Mr. Hart has not pointed to specific facts showing that Sarah Elizabeth Hart was his dependent or that he provided over one-half of her individual support for the taxable years in which he claimed her as a dependent. *See* 26 U.S.C. § 152(d)(1)(C). As such, the Court finds summary judgment is appropriate on this issue. Mr. Hart's deposition testimony does not disputed these facts nor has Mr. Hart pointed to any specific facts that are in dispute on this question. The Motion is granted in this regard.

### D.   Penalties

The United States' Motion also asks the Court to adjudicate Mr. Hart's liabilities as to penalties for late filings, failing to make estimated tax payments, failing to pay taxes, and an accuracy-related penalty. (Dkt. 72 at 13.) In response, Mr. Hart contends that because the amount/accuracy of his tax liability has yet to be determined, the assessment of these penalties cannot be determined because there is a genuine issue of material fact. (Dkt. 86 at 8-9.) The United States maintains that the Court should

determine that Mr. Hart is liable for the penalties even if the calculation must be made later. (Dkt. 96 at 8.)

As to the penalties imposed for the tax year 1996, as previously determined, the Court finds those tax liabilities and penalties are appropriate and the Motion is granted as to that tax year. As to the remainder of the tax years at issue, the Court finds it premature at this stage to grant summary judgment as to the penalties and interest that may be imposed on the tax liabilities yet to be determined. There is little doubt that the four types of penalties and interest payments identified by the United States will be imposed against Mr. Hart. The imposition of such penalties and interest, however, will be made after the tax liabilities are determined.

**E.      Foreclosure of Tax Liens Upon Real Property**

The United States argues the Court should determine that Mr. Hart is the true owner of the real property located at 4430 E. Sarah Loop, Athol, Idaho (the "Property"). (Dkt. 72 at 17.) Again, Mr. Hart argues this determination is premature until the amount of the tax liability is litigated and resolved. (Dkt. 86 at 9.) The United States makes clear in its reply that it does not intend to sell the Property before the amount of the tax liens has been determined. (Dkt. 96 at 9-10.) Instead, the United States asks that the Court determine that Mr. Hart's transfer of the Property to White Peak Ventures was ineffective and that Mr. Hart remains the owner of the Property.

At issue here is Mr. Hart's transfer of the Property to White Peak Ventures on August 8, 1997. The following day, White Peak Ventures transferred the Property to the

**MEMORANDUM DECISION AND ORDER - 37**

Sarah Elizabeth Hart Trust. The United States argues none of the transferees were bona fide purchasers of the Property and, therefore, Mr. Hart remains the owner of the Property and it is rightfully subject to the tax liens arising from Mr. Hart's tax liabilities. In this case, the Court has previously determined that Jon Lafferty, Trustee of Sarah Elizabeth Hart Trust, was not a bona fide purchaser of the Property. (Dkt. 56.) Tim E. Ortega, Trustee of White Peak Ventures, has not responded to the Motion for Summary Judgment or Requests for Admission. (Dkt. 71 at ¶ 42.) Pursuant to Federal Rule of Civil Procedure 36(a)(3), the failure to respond to the Requests for Admission results in the matter being admitted and conclusively established. Fed. R. Civ. P. 36(a)(3), (b). Similarly, by failing to respond to the Motion for Summary Judgment, the Court can consider the United States' assertion of fact that Mr. Ortega was not a bona fide purchaser as undisputed for purposes of the Motion. *See* Fed. R. Civ. P. 56(e)(2); Local Civil Rule 7.1(e). Moreover, Mr. Hart himself has conceded that the "United States is entitled to foreclose on the real property" and "foreclosure is imminent." (Dkt. 86 at 9) (Dkt. 71 at ¶ 43.)

Based on the foregoing, the Court finds it is undisputed that Mr. Hart's attempted transfers of the Property are ineffective as neither recipient was a bona fide purchaser for value. As such, the Court grants the Motion to the extent it seeks a determination that Mr. Hart is the true and beneficial owner of the Property and the United States' tax liens arising from Mr. Hart's liabilities attach to the Property. Because the amount of the tax liabilities has not yet been fully resolved, the Court agrees that it would be premature to order and/or allow the Property to be sold at this time.

**MEMORANDUM DECISION AND ORDER - 38**

## <u>ORDER</u>

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Strike

(Dkt. 95) is **GRANTED** and the Motion for Partial Summary Judgment (Dkt. 70)

**GRANTED in part and DENIED in part** as follows.

1) The Motion is granted as to the tax liability of Mr. Hart for 1996.

2) The Motion is granted as to Mr. Hart's claims for office deductions related to any Schedule C entity separate from Alpine Northwest.

3) The Motion is granted as to the determination that Mr. Hart is the true and beneficial owner of the Property.

4) The Motion is granted as to the determination that Mr. Hart did not qualify to file as a head of household status.

5) The Motion is denied in all other respects.

DATED:  **June 6, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 39**